## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re GoodRx and Pharmacy Benefit Manager Antitrust Litigation (No. II) <br><br> This Document Applies To: <br><br> ALL CASES | Case No.: 1:25-md-03148-MSM-AEM <br><br> MDL No. 3148 <br><br> **REDACTED** |

## <u>CAREMARK DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.     THE PLEADINGS ................................................................................................. 3

       A.    The Proposed Class Definition ...................................................................... 3

       B.    Plaintiffs' Allegations ................................................................................... 4

II.    THE PARTIES ...................................................................................................... 7

       A.    The Pharmacy Plaintiffs ............................................................................... 7

       B.    The Association Plaintiffs ............................................................................. 7

       C.    OneroRx, Inc. ............................................................................................. 8

       D.    GoodRx and the Other PBMs ...................................................................... 8

       E.    Caremark .................................................................................................... 9

III.   THE PHARMACY PLAINTIFFS' ARBITRATION AGREEMENTS WITH
       CAREMARK ......................................................................................................... 9

       A.    The Pharmacy Plaintiffs' "Provider Agreements" .......................................... 9

       B.    Pharmacies Belonging to the Associations Have Arbitration Agreements .............. 11

       C.    Pharmacies Owned by OneroRx Have Arbitration Agreements ............................. 12

ARGUMENT ................................................................................................................. 12

I.     THE PHARMACY PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE
       AND THIS ACTION SHOULD BE STAYED AGAINST CAREMARK ................. 13

       A.    A Valid Arbitration Agreements Exists ......................................................... 15

       B.    The Sherman Act Claim Is Covered by the Arbitration Agreement ..................... 16

             1.    Antitrust Claims Are Arbitrable and Class Action Waivers Are Enforceable... 16

             2.    The Arbitration Provision of the Provider Agreement Covers the Sherman Act
                   Claim Asserted Against Caremark ....................................................... 17

II.    THE CLAIM BY THE ASSOCIATION PLAINFFS SHOULD BE DISMISSED . 20

III.   PLAINTIFF ONERORX'S SHERMAN ACT CLAIM SHOULD BE DISMISSED
       FOR LACK OF STANDING ................................................................................ 22

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Co.* v. *Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................................16, 17

*Batory* v. *Sears, Roebuck & Co.*,
124 Fed. App'x 530 (9th Cir. 2005) ........................................................................15

*Billers* v. *S-H OpCo Greenwich Bay Manor, LLC*,
961 F.3d 502 (1st Cir. 2020) ........................................................................16

*Bowie's Priority Care Pharm., L.L.C.* v. *CaremarkPCS, L.L.C.*,
2018 WL 1964596 (N.D. Ala. Apr. 26, 2018) ........................................................13, 16, 19

*Burton's Pharm., Inc.* v. *CVS Caremark Corp.*,
2015 WL 5430354 (M.D.N.C. Sept. 15, 2015) ........................................................13, 16, 18

*Campbell* v. *Gen. Dynamics Gov't Sys. Corp.*,
407 F.3d 546 (1st Cir. 2005) ........................................................................14

*Caremark LLC* v. *Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ........................................................................12

*Caremark LLC* v. *Choctaw Nation*,
2022 WL 768098 (D. Ariz. Mar. 14, 2022), *aff'd*, 104 F.4th 81 (9th Cir. 2024) ...................13

*Caremark, LLC* v. *Choctaw Nation*,
104 F.4th 81 (9th Cir. 2024) ........................................................................19

*Comedy Club, Inc.* v. *Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........................................................................23

*Crawford Pro. Drugs, Inc.* v. *CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) ........................................................................13

*CVS Pharm., Inc.* v. *Gable Fam. Pharm.*,
2012 U.S. Dist. LEXIS 191047 (D. Ariz. Oct. 19, 2012) ................................................13, 16

*Dean Witter Reynolds, Inc.* v. *Byrd*,
470 U.S. 213 (1985) ........................................................................14

*Dr.'s Assocs., Inc.* v. *Downey*,
No. 3:06-cv-1170 (D. Conn. Feb. 12, 2007) ........................................................21

*Energy Transp., Ltd.* v. *M.V. San Sebastian*,
  348 F. Supp. 2d 186 (S.D.N.Y. 2004)........................................................................17

*Fantastic Sam's Franchise Corp.* v. *FSRO Ass'n*,
  824 F. Supp. 2d 221 (D. Mass. 2011), *aff'd*, 683 F.3d 18 (1st Cir. 2012).............22

*G.K.A. Beverage Corp.* v. *Honickman*,
  55 F.3d 762 (2d Cir.1995)................................................................................2, 22

*Gilmer* v. *Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)............................................................................................14

*Governor & Co. of Bank of Scotland* v. *Wasserman*,
  928 F. Supp. 2d 400 (D.R.I. 2013)...................................................................14

*Grand Wireless, Inc.* v. *Verizon Wireless, Inc.*,
  748 F.3d 1 (1st Cir. 2014)............................................................................17, 18

*Grasso Enters., L.L.C.* v. *CVS HealthCorp*,
  143 F. Supp. 3d 530 (W.D. Tex. 2015)..........................................................13, 15

*Hopkinton Drug, Inc.* v. *CaremarkPCS, L.L.C.*,
  77 F. Supp. 3d 237 (D. Mass. 2015)...................................................................13

*Hunt* v. *Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977)..........................................................................................21

*Info. Res., Inc.* v. *Dun & Bradstreet Corp.*,
  127 F. Supp. 2d 411 (S.D.N.Y. 2000).................................................................22

*In re Intuniv Antitrust Litig.*,
  2021 WL 517386 (D. Mass. Jan. 29, 2021).......................................................17

*Johnson Controls Sec. Sols., LLC* v. *Int'l Bd. of Elec. Workers, Loc. 103*,
  24 F.4th 87 (1st Cir. 2022)..............................................................................17

*Keaveny Drug, Inc.* v. *GoodRx, Inc.*,
  No. 2:24-cv-09379 (C.D. Cal. Oct. 30, 2024).....................................................3

*Lackie Drug Store, Inc.* v. *Ark. CVS Pharm., LLC*,
  2021 WL 5567360 (E.D. Ark. Nov. 29, 2021).................................................13, 15

*Lebovits* v. *Cavalry Portfolio Servs., LLC*,
  2021 WL 1198967 (S.D.N.Y. Mar. 29, 2021)......................................................18

*Local 640 Trs.* v. *CIGNA Health & Life. Ins. Co.*,
  2021 WL 3290534 (D. Ariz. Aug. 2, 2021)........................................................23

iii

*Lombardi* v. *DirecTV, Inc.*,
549 F. App'x 617 (9th Cir. 2013) ............................................................................15

*Md. Optometric Assoc.* v. *Davis Vision, Inc.*,
2004 WL 7330337 (D. Md. Dec. 21, 2004)............................................................21

*MedfusionRx, LLC* v. *Aetna Life Ins. Co.*,
2012 U.S. Dist. LEXIS 191045 (S.D. Miss. Dec. 21, 2012) ..................................13

*Motorola Mobility LLC* v. *AU Optronics Corp.*,
775 F.3d 816 (7th Cir. 2015) .............................................................................22, 23

*Muecke Co., Inc.* v. *CVS Caremark Corp.*,
2012 WL 12535439 (S.D. Tex. Feb. 22, 2012) .........................................13, 16, 18

*Oberstein* v. *Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ...................................................................................16

*Osterhaus Pharm. Inc.* v. *CVS Health Corp.*,
2024 WL 4785818 (D. Ariz. Nov. 13, 2024)..........................................................19

*Osterhaus Pharm. Inc.* v. *CVS Health Corp.*,
2025 WL 472731 (D. Ariz. Feb. 12, 2025) .......................................................12, 19

*Pa. Chiropractic Ass'n* v. *Blue Cross Blue Shield Ass'n*,
713 F. Supp. 2d 734 (N.D. Ill. 2010) .................................................................20, 21

*Paduano* v. *Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) .......................................................................13

*Rodriguez-Rivera* v. *Allscripts Healthcare Sols., Inc.*,
43 F.4th 150 (1st Cir. 2022).....................................................................................13

*RX Pros, Inc.* v. *CVS Health Corp.*,
2016 WL 316867 (W.D. La. Jan. 26, 2016) ......................................................13, 18

*Safra Sec., LLC* v. *Gonzalez*,
764 Fed App'x 125 (2d Cir. 2019)...........................................................................18

*Smith* v. *Spizzirri*,
601 U.S. 472 (2024)..................................................................................................20

*Sourcing Unlimited, Inc.* v. *Asimco Int'l Inc.*,
526 F.3d 38 (1st Cir. 2008)......................................................................................23

*Stevens/Leinweber/Sullens, Inc.* v. *Holm Dev. & Mgmt., Inc.*,
795 P.2d 1308 (Ariz. Ct. App. 1990) .......................................................................15

*United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*,
 363 U.S. 574 (1960)............................................................................................................17

*Uptown Drug Co., Inc.* v. *CVS Caremark Corp.*,
 962 F. Supp. 2d 1172 (N.D. Cal 2013) ...................................................................13, 16

*Valdiviezo* v. *Phelps Dodge Hidalgo Smelter, Inc.*,
 995 F. Supp. 1060 (D. Ariz. 1997) ......................................................................................15

*Vitality Land Holdings, LLC* v. *Loan Funder LLC*,
 2025 WL 897718 (D.R.I. Mar. 24, 2025) ..........................................................................14

*Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Jr. Univ.*,
 489 U.S. 468 (1989)..............................................................................................................14

*W. Va. CVS Pharm., LLC* v. *McDowell Pharm., Inc.*,
 796 S.E.2d 574 (W. Va. 2017).........................................................................................13, 16

**Statutes**

9 U.S.C. §§ 1 et seq.............................................................................................................13, 14

**Other Authorities**

Fed R. Civ. P. 12(b)(6)............................................................................................................1, 12

Defendants CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; CaremarkPCS, L.L.C., and CVS Health Corporation (referred to below as "Caremark") hereby move this Court as follows:

(1) With respect to Plaintiffs Keaveny Drug, Inc., Star Discount Pharmacy, Inc., and AIDS Healthcare Foundation (referred to below as the "Pharmacy Plaintiffs"), Caremark moves pursuant to the Federal Arbitration Act ("FAA") Sections 3 and 4 for an order compelling arbitration and staying this action as against Caremark pending arbitration.

(2) With respect to Plaintiffs National Community Pharmacists Association ("NCPA") and Philadelphia Association of Retail Druggists ("PARD"; referred to collectively below as the "Association Plaintiffs" or "Associations"), Caremark moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Association Plaintiffs' Sherman Act claim against Caremark because their members signed arbitration agreements, which prohibit all representative actions and class actions, with Caremark.

(3) With respect to Plaintiff OneroRx, Inc. ("OneroRx"), Caremark moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing OneroRx's Sherman Act claim for lack of standing because it is the corporate parent of allegedly harmed pharmacies. As those pharmacies have arbitration agreements with Caremark, any claims on or on behalf of them would have to be arbitrated.

## PRELIMINARY STATEMENT

This case is the very antithesis of an antitrust case: the Consolidated Class Action Complaint faults the Defendants for ostensibly offering pharmacy customers *lower* prices for prescription drugs. That is exactly what the antitrust laws are designed to accomplish. But that need not detain the Court when it comes to Caremark. The Pharmacy Plaintiffs agreed with Caremark that they have no "right to litigate that dispute through a court" but, rather, that any

dispute or claim "will be exclusively settled by arbitration."  As such, the Court should compel each of the three Pharmacy Plaintiffs to arbitrate their claims and should stay their claim as against Caremark pending arbitration.  If the Pharmacy Plaintiffs do not choose to arbitrate, their claims against Caremark should be dismissed with prejudice.

Apparently recognizing that pharmacies like the Pharmacy Plaintiffs have no right to litigate in court, the other Plaintiffs try to end run the arbitration agreements.

The Association Plaintiffs seek to represent and prosecute the claims of their pharmacy members.  The Associations are not permitted to do that.  Trade associations like these have no greater right to litigate in court than do their members.  If, as is the case here, an association's members are prohibited by agreement from litigating in court, then the association is prohibited from litigating in court.  The pharmacies belonging to the Association Plaintiffs cannot dodge their arbitration agreements by having the Associations serve as their representatives in court.  Indeed, the Caremark arbitration agreement expressly forbids any "representative action or proceeding." Accordingly, the Sherman Act claim made by the Association Plaintiffs should be dismissed.

Plaintiff OneroRx tries a different angle, but the outcome is the same.  OneroRx is not a pharmacy and, thus, does not submit reimbursement claims to Caremark.  It is a private equity-backed corporation that buys up independent pharmacies, which it then holds as subsidiaries.  Even if subsidiaries owned by OneroRx did not have arbitration agreements with Caremark - - which they do - - it is a long and well-established principle of antitrust law that parent corporations have no standing to bring the Sherman Act claims of their subsidiaries.  *See G.K.A. Beverage Corp.* v. *Honickman*, 55 F.3d 762, 766 (2d Cir.1995).  And, in any case, any claims by or on behalf of those pharmacies would have to be arbitrated.  Accordingly, the Sherman Act claim made by OneroRx should be dismissed.

For the foregoing reasons, Caremark respectfully submits that its Motion to Compel Arbitration and Motion to Dismiss should be granted.  And though the Court need not reach the inadequacies of Plaintiffs' substantive antitrust allegations in deciding this Motion, Caremark joins in Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint.

## BACKGROUND

## I.    THE PLEADINGS

On October 30, 2024, Plaintiff Keaveny Drug, Inc. filed a class action complaint in the Central District of California against GoodRx, Inc. and GoodRx Holdings, Inc. ("GoodRx"); CVS Caremark Corporation; and several other PBMs.  Compl., *Keaveny Drug, Inc.* v. *GoodRx, Inc.*, No. 2:24-cv-09379, ECF No. 1 (C.D. Cal. Oct. 30, 2024).  Twelve additional cases subsequently were filed in the Central District of California, the District of Connecticut, the Eastern District of New York, and the District of Rhode Island.  Transfer Order 4, ECF No. 1.  On April 2, 2025, the U.S. Judicial Panel on Multidistrict Litigation transferred those 13 actions to the District of Rhode Island for coordinated or consolidated pretrial proceedings.  *Id.* at 2–3.  Since then, additional cases have been transferred to the District of Rhode Island.  *See, e.g.*, Conditional Transfer Order, ECF No. 14.

### A.    The Proposed Class Definition

On September 15, 2025, Plaintiffs filed a one-count Consolidated Class Action Complaint ("CAC") against GoodRx; CaremarkPCS Health, L.L.C., Caremark, L.L.C., CaremarkPCS, L.L.C., PCS Health Systems, Inc.,[1] and CVS Health Corporation (collectively, "Caremark"); and several other PBMs (together with GoodRx and Caremark, "Defendants"), alleging a contract in restraint of trade in violation of Section 1 of the Sherman Act.  CAC at ¶¶ 301–314.  Plaintiffs

---

[1] PCS Health Systems, Inc., was dismissed without prejudice on November 3, 2025.  Stip Order Regarding the Effect of the Consol. Compl., ECF No. 79.

3

bring their purported class action on behalf of: "All pharmacies and/or entities that dispense pharmaceutical drugs in the United States that were or are reimbursed for generic drugs in connection with the GoodRx Integrated Savings Program." *Id.* at ¶ 280. Some of the Plaintiffs seek to be appointed as class representatives. *Id.* at ¶¶ 280, 316. It appears, however, that only the Pharmacy Plaintiffs are included within the proposed class. Neither the Association Plaintiffs nor OneroRx fall within the proposed class definition since neither is a pharmacy, neither dispenses drugs, and neither is reimbursed for the cost of generic drugs. Consequently, even if a class were certified, the Association Plaintiffs and OneroRx would not be members of the proposed class and could not be representatives of the proposed class of pharmacies.

### B.    Plaintiffs' Allegations

Plaintiffs allege that, since January 1, 2024, the PBM Defendants have agreed to participate in GoodRx's "Integrated Savings Program" ("ISP"), *id.* at ¶ 5, which Plaintiffs allege is a "horizontal price-fixing agreement" through which Defendants allegedly "suppress the prices paid to independent pharmacies [by their customers] for generic drug prescriptions," *id.* at ¶¶ 1–2. GoodRx has long had a price comparison tool for prescriptions, which aggregates pricing from a variety of sources to offer "the lowest prices" to customers. *Id.* at ¶ 121; GoodRx 2024 Form 10-K at 7. Initially, customers could access these prices and discounts through a discount card or on the GoodRx app or website. *Id.* at ¶¶ 125–226. GoodRx's ISP offers customers the ability to access those GoodRx prices and discounts available at a particular pharmacy if the customer is a member of a participating PBM. *Id.* at ¶144; GoodRx 2024 Form 10-K at 10.

Prior to filing the CAC, Plaintiffs sought limited pre-complaint discovery from Defendants, including the "ISP Agreements" between GoodRx and each of the PBM Defendants. Hr'g Tran. 20:8–13, June 23, 2025. Plaintiffs argued that since "this case really comes down to what's the nature of those agreements," the "consolidated complaint would be much more efficiently

managed and directed if the limited production of those agreements is permitted now." *Id.* Ordering Defendants to produce the contracts prior to the master consolidated pleading, Plaintiffs asserted, would "make this a much more focused and efficient argument when we get to the consolidated complaint and ultimately the Rule 12 motions." *Id.* at 20:22–24. The ISP Agreements, Plaintiffs represented to the Court, are "the center of the discussion." *Id.* at 21:14–15.

By order dated August 1, 2025, the Court ordered that each of the ISP Agreements with the PBM Defendants be produced, including GoodRx's ISP Agreement with Caremark. Case Management Order No. 2, ECF No. 45. Plaintiffs allege that Caremark's ISP Agreement - - called the Caremark Cost Saver Program Services Agreement (the "Caremark Agreement") - - violates Section 1 of the Sherman Act because it "required Caremark not to out-bid any of its competitors on reimbursement rates paid to pharmacies for generic drugs and to share its competitively sensitive information with rivals through GoodRx." CAC at ¶ 154.

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 2, GDRX-MDL-G00000013 at §

2.1.[2] ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

---

[2] "Ex. __" refers to the exhibits attached to the accompanying Declaration of Steven D. McCall, dated November 7, 2025.



*Id.*

CAC at ¶ 125.

Ex. 2, GDRX-MDL-G00000013 at § 6.2.

In short, once having received a copy of the Caremark Agreement, Plaintiffs apparently chose to disregard what that contract actually says, presumably because the contract directly contradicts Plaintiffs' central allegation against Caremark.

---

[3] *See* Ex. 2, GDRX-MDL-G00000013 at Ex. 4, § 5.3.

## II.    THE PARTIES

### A.    The Pharmacy Plaintiffs

Plaintiff Keaveny Drug, Inc. is an independent pharmacy with its principal place of business located in Minnesota.  CAC at ¶ 37.  Plaintiff Star Discount Pharmacy is an independent pharmacy with its principal place of business located in Alabama that operates five stores.  *Id.* at ¶ 38.  Plaintiff AIDS Healthcare Foundation is a global nonprofit organization, which allegedly operates over 60 pharmacies in the United States.  *Id.* at ¶ 40.  As described below, each of these three Pharmacy Plaintiffs entered into agreements with Caremark requiring them to arbitrate their antitrust claims and prohibiting them from litigating in court.  *See infra* 11–13.

### B.    The Association Plaintiffs

The Association Plaintiffs purport to sue Caremark in strictly a representative capacity - - *i.e.,* as representatives of their pharmacy members.  They have brought no antitrust claims on their own behalf.  To be precise, the Associations have not alleged that they themselves have suffered any antitrust injury or damages.  Rather, they allege, as some sort of representatives, that their "Member Pharmacies" - - not the Associations - - "were required to pay additional transaction fees," as a result of which their "Member Pharmacies have suffered economic injury to their business or property and deprivation of the benefit of free and fair competition."  CAC at ¶¶ 41– 42. That is the exact same claim alleged by the Pharmacy Plaintiffs:  "Keaveny Drug was required to pay additional transaction fees," as a result of which "Keaveny Drug has suffered economic injury to its business or property and deprivation of the benefit of free and fair competition."  *Id.* at ¶¶ 37–38, 40.

Having alleged no claims or injuries of their own, the Associations purport to seek for their members the exact same relief as all the other Plaintiffs do, including injunctive relief.  *Id.* at ¶¶ 315–20.  Likewise, in the class action allegations, the Associations do not contend that they are

members of the class or that they have claims typical of the proposed class, but rather that the claims *of their members* allegedly are "typical of those in the Class." *Id.* at ¶ 291.

### C.     OneroRx, Inc.

Plaintiff OneroRx purports to sue with respect to "sixty-seven independent pharmacies located in Illinois, Indiana, Iowa, Michigan, Missouri, Nebraska, and Wisconsin." *Id.* at ¶ 39. OneroRx does *not* allege that it has any payment or reimbursement agreements with Caremark or any of the other defendants; that it submits any reimbursement claims to Caremark or any of the other defendants; or that it itself is a pharmacy that has been injured by the alleged antitrust violation. That is because OneroRx is not a pharmacy. It is a Delaware corporation registered to do business as a Foreign Corporation in Iowa. Decl. of Steven D. McCall at ¶ 59 (hereafter "McCall Decl."). It is not registered as a pharmacy in Iowa or anywhere else; it has no National Provider Identifier, which is a 10-digit identification number for healthcare providers, including pharmacies, required for certain administrative and financial transactions; and it has no National Council for Prescription Drug Programs number, which is a national identification number assigned to every licensed pharmacy in the United States. *Id.* at ¶¶ 60–64.

### D.     GoodRx and the Other PBMs

Plaintiffs name as defendants GoodRx, which allegedly aggregates pricing from a variety of sources to offer "the lowest prices" to customers. CAC at ¶ 121. Defendants Express Scripts, Inc., MedImpact Healthcare Systems, Inc., and Navitus Health Solutions, LLC allegedly entered into ISP Agreements with GoodRx. *Id.* at ¶¶ 53, 56–57. Defendants Express Scripts Holding Company and The Cigna Group were allegedly involved in negotiations with GoodRx and allegedly coordinated with entities in GoodRx ISP programs. *Id.* at ¶¶ 54–55.

### E.    Caremark

Despite the Pharmacy Plaintiffs' arbitration agreements, Plaintiffs also name Caremark as a defendant. *Id.* at ¶¶ 47–52.  Caremark is a pharmacy benefit manager that administers pharmacy benefits on behalf of third-party payors, such as health insurance plans and employer-sponsors of group health plans. *Id.* at ¶ 3; McCall Decl. ¶ 11.  Caremark processes and reimburses pharmacy claims submitted by Caremark's clients' plan participants or pharmacies on behalf of Caremark's clients' plan participants.  CAC at ¶ 3; McCall Decl. at ¶ 12.  On or around June 23, 2023, Caremark announced the "Caremark Cost Saver" program, a savings program in partnership with GoodRx.  CAC at ¶ 214.  This program was designed to give Caremark's clients' plan participants "automatic access to GoodRx's prescription pricing to allow them to pay *lower prices*, when available, on generic medications in a seamless experience at the pharmacy counter." *Id.* at ¶ 216 (emphasis added).

Caremark also manages pharmacy services for its clients.  McCall Decl. at ¶ 13.  In return for being authorized as a pharmacy in the Caremark network and having access to Caremark's customers, pharmacies (or "Providers") agree to fill prescriptions for participants in Caremark's clients' health plans.  They also agree to adhere to the policies and procedures set forth in the Caremark Provider Manual. *Id.* at ¶¶ 65, 73; Provider Agreement at ¶ 1.

## III.    THE PHARMACY PLAINTIFFS' ARBITRATION AGREEMENTS WITH CAREMARK

### A.    The Pharmacy Plaintiffs' "Provider Agreements"

Each of the Pharmacy Plaintiffs - - referred to as a "Provider" - - signed and agreed to a "Provider Agreement."  McCall Decl. at ¶ 9.  The Provider Agreement consists of (1) the

"Caremark Provider Agreement" and (2) the Caremark "Provider Manual"[4] ("Provider Agreement"). In 2000, 2011, and 2018, respectively, Pharmacy Plaintiffs Star Discount Pharmacy, Inc., Keaveny Drugs, Inc., and AIDS Healthcare Foundation each entered into a Provider Agreement with Caremark.[5]  *Id.* at ¶¶ 29, 41, 50; Exs. 4, 8–10, Pharmacy Plaintiff Provider Agreements.  Neither Caremark nor any Pharmacy Plaintiff has terminated its Provider Agreement.  McCall Decl. at ¶¶ 33, 43, 52.

The Provider Manual relevant to this dispute is the 2024 Provider Manual.  *See id.* at ¶¶ 40, 49, 58.  Caremark distributed hard copies of the Provider Manual with an effective date of January 1, 2024, to each of the Pharmacy Plaintiffs.  *See id.* at ¶¶ 36–38, 45–47, 54–56.  The Provider Manual states that it "is part of the Provider Agreement" and "incorporated into the Provider Agreement pursuant to the terms thereof."  It is also clear that it "supersedes and replaces all previous versions of the Provider Manual."  Ex. 3, Provider Manual at § 1.  Furthermore, the Provider Manual is clear that, "If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by [the] Provider and is considered part of the Provider Agreement."  *Id.* at § 15.07. Each of the Pharmacy Plaintiffs

---

[4] Pursuant to paragraph 11 of the Caremark Provider Agreement ("Entire Agreement"): "This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred collectively as the 'Provider Agreement' or 'Agreement.'" Exs. 4, 8–10.

[5] In 2000, Advance Paradigm, Inc. acquired PCS Health Systems, Inc. and, shortly thereafter, Advance Paradigm, Inc. changed its name to AdvancePCS.  McCall Decl. at ¶ 31.  In 2004, Caremark acquired AdvancePCS.  *Id.* at ¶ 32.  On October 24, 2025, Caremark notified all pharmacies in the Caremark retail pharmacy network that it had consolidated its pharmacy network into CaremarkPCS Health, L.L.C., effective October 1, 2025.  *Id.* at ¶ 5.  CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; and CaremarkPCS, L.L.C. are wholly owned subsidiaries of CVS Health Corporation.

submitted reimbursement claims to Caremark after receiving the 2024 version of the Provider Manual.  McCall Decl. at ¶¶ 39, 48, 57.

The Provider Agreements include the following arbitration provision:

> Any and all disputes between Provider and Caremark [including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents, and assigns (collectively referred to in this Arbitration section as "Caremark")], including, but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration.

Ex. 3, Provider Manual at § 15.09.  To avoid any doubt, the Provider Agreements state explicitly that the Pharmacy Plaintiffs have no right to sue in court:

> Arbitration with respect to a dispute is binding and neither Provider nor Caremark will have the right to litigate in court.  In arbitration, Provider and Caremark will not have rights that are provided in court, including the right to trial by judge or jury.  All of these rights are waived and disputes must be resolved through arbitration.

*Id.* at § 15.09.03.

In addition, the Provider Agreements prohibit class actions, representative actions, and any consolidated proceedings:

> All disputes are subject to arbitration on an individual basis, not on a class action or representative basis, or through any form of consolidated proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement.

*Id.* at § 15.09.03.

### B.    Pharmacies Belonging to the Associations Have Arbitration Agreements

The pharmacies belonging to the Associations who participate in Caremark's Cost Saver program also entered into Provider Agreements with Caremark in which they agreed to arbitrate their claims and agreed not to litigate in court.  McCall Decl. at ¶ 17.  For example, Sam's Health Mart Pharmacies are owned by Christian Tadrus, the President-Elect of the NCPA.  *Id.* at ¶¶ 71–72. Each of the Sam's Health Mart Pharmacies entered into a Provider Agreement with Caremark,

and each Provider Agreement contains a mandatory and binding arbitration provision. *Id.* at ¶ 73. And the Chair of the NCPA, Justin Wilson, owns Bestyet Pharmacy, Valu-Med Pharmacy, and Valu-Med Pharmacy Fort Gibson, each of which entered into a Provider Agreement with Caremark that contains a mandatory and binding arbitration provision. *Id.* at ¶¶ 74–76. Similarly, Gladwyne Pharmacy, which describes itself as an "active member[] in" both PARD and the NCPA, has entered into a Provider Agreement with Caremark that contains a mandatory and binding arbitration provision. *Id.* at ¶¶ 77–78.

### C. Pharmacies Owned by OneroRx Have Arbitration Agreements

The pharmacies in OneroRx's so-called "network" that have "filled generic prescriptions for insured patients that were subject to the ISP Scheme," CAC at ¶ 39, have entered into Provider Agreements with Caremark, thereby agreeing to arbitrate any claims against Caremark and agreeing not to litigate in court, McCall Decl. at ¶ 65; Ex. 10, OneroRx Provider Agreements. Were the claims of those pharmacies asserted against Caremark, they would have to be arbitrated.

## ARGUMENT

Caremark moves pursuant to the FAA Sections 3 and 4 for an order compelling arbitration and staying this action as against Caremark pending arbitration by the Pharmacy Plaintiffs, if they elect to arbitrate. Caremark's arbitration agreements with pharmacies have been routinely enforced by courts throughout the country and, as such, pharmacies have consistently been compelled to arbitrate against Caremark.[6]

Further, Caremark moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Association Plaintiffs' and OneroRx's claims against Caremark. The Association

---

[6] *See Caremark LLC* v. *Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (affirming order granting motion to compel arbitration based on arbitration provision in Caremark's 2020 provider manual); *Osterhaus Pharm. Inc.* v. *CVS Health Corp.*, 2025 WL 472731, at *14 (D. Ariz. Feb. 12, 2025) (granting motion compel arbitration based on arbitration provision in Caremark's 2018 and

Plaintiffs' claim is prohibited by their members' Provider Agreements, including the provision requiring arbitration and the provision prohibiting all representative actions and class actions. OneroRx has no standing under the Sherman Act, and their pharmacy subsidiaries that have "filled generic prescriptions subject to the ISP scheme," CAC at ¶ 39, have binding arbitration agreements.

## I.    THE PHARMACY PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE AND THIS ACTION SHOULD BE STAYED AGAINST CAREMARK

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., applies to any written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such a contract. *See Rodriguez-Rivera* v. *Allscripts Healthcare Sols., Inc.*, 43 F.4th

---

2020 provide manuals); *Caremark LLC* v. *Choctaw Nation*, 2022 WL 768098, at *6 (D. Ariz. Mar. 14, 2022), *aff'd*, 104 F.4th 81 (9th Cir. 2024) (granting motion to compel arbitration based on arbitration provision in Caremark's 2020 provider manual); *Lackie Drug Store, Inc.* v. *Ark. CVS Pharm., LLC*, 2021 WL 5567360, at *4 (E.D. Ark. Nov. 29, 2021) (same); *Bowie's Priority Care Pharm., L.L.C.* v. *CaremarkPCS, L.L.C.*, 2018 WL 1964596, at *7 (N.D. Ala. Apr. 26, 2018) (same for Caremark's 2018 provider manual); *W. Va. CVS Pharm., LLC* v. *McDowell Pharm., Inc.*, 796 S.E.2d 574, 590 (W. Va. 2017) (reversing order denying motion to compel arbitration based on arbitration provision in Caremark's 2009 provider manual); *RX Pros, Inc.* v. *CVS Health Corp.*, 2016 WL 316867, at *4 (W.D. La. Jan. 26, 2016) (granting motion to compel arbitration based on arbitration provision in Caremark's 2016 provider manual); *Grasso Enters., L.L.C.* v. *CVS HealthCorp*, 143 F. Supp. 3d 530, 544 (W.D. Tex. 2015) (same for Caremark's 2014 provider manual); *Burton's Pharm., Inc.* v. *CVS Caremark Corp.*, 2015 WL 5430354, at *12 (M.D.N.C. Sept. 15, 2015) (same for the then-operative version of Caremark's provider manual), *report and recommendation adopted*, 2015 WL 5999386, at *1 (M.D.N.C. Oct. 14, 2015); *Hopkinton Drug, Inc.* v. *CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 249, 255 (D. Mass. 2015) (same for Caremark's 2014 provider manual); *Paduano* v. *Express Scripts, Inc.*, 55 F. Supp. 3d 400, 422 (E.D.N.Y. 2014) (same); *Crawford Pro. Drugs, Inc.* v. *CVS Caremark Corp.*, 748 F.3d 249, 259–63 (5th Cir. 2014) (same for the then-operative version of Caremark's provider manual); *Uptown Drug Co., Inc.* v. *CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1183–87 (N.D. Cal 2013) (same for Caremark's 2011 provider manual); *MedfusionRx, LLC* v. *Aetna Life Ins. Co.*, 2012 U.S. Dist. LEXIS 191045, at *17 (S.D. Miss. Dec. 21, 2012) (same); *CVS Pharm., Inc.* v. *Gable Fam. Pharm.*, 2012 U.S. Dist. LEXIS 191047, at *37 (D. Ariz. Oct. 19, 2012) (same for the then-operative version of Caremark's provider manual); *Muecke Co., Inc.* v. *CVS Caremark Corp.*, 2012 WL 12535439, at *20–23 (S.D. Tex. Feb. 22, 2012) (same for Caremark's 2007 and 2009 provider manuals), *report and recommendation adopted*, 2012 WL 12535440, at *1 (S.D. Tex. Mar. 29, 2012), *modified*, 2014 WL 11342572, at *6 (S.D. Tex. June 27, 2014), *aff'd*, 615 F. App'x 837, 841–42 (5th Cir. 2015).

150, 167 (1st Cir. 2022) (quoting 9 U.S.C. § 2). The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Supreme Court has emphasized that the FAA creates a strong, liberal federal policy that favors arbitration. *See, e.g.*, *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Court has authority to examine whether a "valid agreement to arbitrate exists," whether "the movant is entitled to invoke the arbitration clause," whether "the other party is bound by that clause," and whether "the claim asserted comes within the clause's scope." *Campbell* v. *Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Any ambiguities relating to the scope of the arbitration clause must be resolved in favor or arbitration. *See Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

As a valid arbitration agreement exists between Caremark and each of the Pharmacy Plaintiffs, and as the Sherman Act claim falls within the broad scope of those arbitration agreements, the Pharmacy Plaintiffs should be compelled to arbitrate (if they wish to proceed), and this case should be stayed as against Caremark.[7]

---

[7] Any question regarding the existence or scope of the arbitration agreement is governed by Arizona law because each Provider Agreement contains a valid Arizona choice-of-law clause. Exs. 4, 8–10. A Rhode Island court will disregard a choice-of-law provision only if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," *Governor & Co. of Bank of Scotland* v. *Wasserman*, 928 F. Supp. 2d 400, 406 (D.R.I. 2013), or if "enforcing the clause would 'contravene a strong public policy of the forum in which suit is brought,'" *Vitality Land Holdings, LLC* v. *Loan Funder LLC*, 2025 WL 897718, at *3 (D.R.I. Mar. 24, 2025) (citation omitted). Neither of these exceptions applies here.

###### A.    A Valid Arbitration Agreements Exists

Each of the three Pharmacy Plaintiffs entered into a Provider Agreement, including the arbitration provision and including the waiver of any class or representative actions.  Each accepted the Provider Agreement's terms, including the arbitration provision, by signing the Provider Agreement.  McCall Decl. at ¶¶ 29, 41, 50; Exs. 4, 8–10, Pharmacy Plaintiff Provider Agreements.

These arbitration agreements were supported by consideration.  Caremark and the Pharmacy Plaintiffs reciprocally promised to arbitrate their disputes, Ex. 3, Provider Manual at § 15.09, which is sufficient consideration, *see Lombardi* v. *DirecTV, Inc.*, 549 F. App'x 617, 619 (9th Cir. 2013) (holding that the arbitration agreement was valid under Arizona law because defendant's "reciprocal promise to arbitrate" was "adequate consideration").  *See also Grasso Enters., L.L.C.* v. *CVS HealthCorp*, 143 F. Supp. 3d 530, 538–39 (W.D. Tex. 2015) (rejecting plaintiff's argument that the arbitration clause was not supported by consideration because Caremark did "not [have] the ability to unilaterally amend the Provider Manual and bind pharmacies to those agreements"); *Batory* v. *Sears, Roebuck & Co.*, 124 Fed. App'x 530, 533 (9th Cir. 2005) (holding that arbitration agreement was valid under Arizona law based in part on mutual promises to arbitrate); *Valdiviezo* v. *Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1066–67 (D. Ariz. 1997) (finding that arbitration agreement was valid under Arizona law based on mutual promises to arbitrate); *Stevens/Leinweber/Sullens, Inc.* v. *Holm Dev. & Mgmt., Inc.*, 795 P.2d 1308, 1313 (Ariz. Ct. App. 1990) (discussing mutuality of obligation in arbitration agreements).  In addition, in exchange for entering into the arbitration agreement, each of the Pharmacy Plaintiffs received the benefits of being part of the Caremark pharmacy network.  CAC at ¶¶ 68, 76.

Accordingly, a valid arbitration agreement exists between the Pharmacy Plaintiffs and Caremark.  *See Lackie Drug Store, Inc.* v. *Ark. CVS Pharm., LLC*, 2021 WL 5567360, at *2, *4

(E.D. Ark. Nov. 29, 2021) (enforcing arbitration agreement between PCS Health and the pharmacy, as adopted by AdvancePCS and later by Caremark, and the provisions of Caremark's Provider Manual); *Bowie's Priority Care Pharm., L.L.C.* v. *CaremarkPCS, L.L.C.*, 2018 WL 1964596, at *1, *7 (N.D. Ala. Apr. 26, 2018) (same); *W. Va. CVS Pharm., LLC* v. *McDowell Pharm., Inc.*, 796 S.E.2d 574, 585–87 (W. Va. 2017) (same); *Burton's Pharm., Inc.* v. *CVS Caremark Corp.*, 2015 WL 5430354, at *2, *12 (M.D.N.C. Sept. 15, 2015) (same), *report and recommendation adopted*, 2015 WL 5999386, at *1 (M.D.N.C. Oct. 14, 2015); *Uptown Drug Co., Inc.* v. *CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1187–88 (N.D. Cal 2013) (same); *CVS Pharm., Inc.* v. *Gable Fam. Pharm.*, 2012 U.S. Dist. LEXIS 191047, at *5, *37 (D. Ariz. Oct. 19, 2012) (same); *Muecke Co., Inc.* v. *CVS Caremark Corp.*, 2012 WL 12535439, at *15, *20–23 (S.D. Tex. Feb. 22, 2012) (same), *report and recommendation adopted*, 2012 WL 12535440, at *1 (S.D. Tex. Mar. 29, 2012), *modified*, 2014 WL 11342572, at *6 (S.D. Tex. June 27, 2014), *aff'd*, 615 F. App'x 837, 841–42 (5th Cir. 2015).

### B.    The Sherman Act Claim Is Covered by the Arbitration Agreement

The arbitration provision, and waiver of class and representative actions, in the Provider Agreements cover the antitrust claim alleged here.  *See Billers* v. *S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 508 (1st Cir. 2020) (requiring that the "claim asserted comes within the [arbitration] clause's scope") (citation omitted).

### 1.    Antitrust Claims Are Arbitrable and Class Action Waivers Are Enforceable

The law is clear that claims arising under federal antitrust law are arbitrable and that class action waivers are enforceable.  *Am. Exp. Co.* v. *Italian Colors Rest.*, 570 U.S. 228 (2013); *see also Oberstein* v. *Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) (affirming district court's order compelling arbitration pursuant to the Federal Arbitration Act and dismissing an antitrust

16

action brought under the Sherman Act); *In re Intuniv Antitrust Litig.*, 2021 WL 517386 (D. Mass. Jan. 29, 2021) (granting motion to compel arbitration as to plaintiffs' claims against defendants that they were forced to pay inflated prices due to defendants' improper agreements in violation of the Sherman Act).  In *Italian Colors*, the Supreme Court rejected the argument that arbitration of antitrust claims should not be required.  570 U.S. 228.  There, plaintiffs unsuccessfully argued that the arbitration agreements at issue prohibited class actions in arbitration and enforcing the arbitration agreement would frustrate the purpose of the antitrust laws since the costs of bringing individual antitrust claims exceeded the expected recovery.  *Id.* at 235–36.  The Court held that the "antitrust laws do not 'evinc[e] an intention to preclude a waiver' of class-action procedure" and that no exception would be created for cases in which the plaintiffs alleged that they lacked a sufficient economic incentive to arbitrate individually.  *Id.* at 234, 236 (citing *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Accordingly, the Pharmacy Plaintiffs must be compelled to arbitrate, and must do so without class actions or representative actions.

### 2.    The Arbitration Provision of the Provider Agreement Covers the Sherman Act Claim Asserted Against Caremark

"In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960).  To determine whether a claim is arbitrable, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  *Grand Wireless, Inc.* v. *Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014); *Energy Transp., Ltd.* v. *M.V. San Sebastian*, 348 F. Supp. 2d 186, 202 (S.D.N.Y. 2004).  Courts consistently enforce broad arbitration provisions, such as the one at issue here.  *See Johnson Controls Sec. Sols., LLC* v. *Int'l Bd. of Elec. Workers, Loc. 103*, 24 F.4th

87, 90–91 (1st Cir. 2022) ("a court [is required] to permit a grievance to proceed to arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'") (citation omitted); *Safra Sec., LLC* v. *Gonzalez*, 764 Fed App'x 125, 126 (2d Cir. 2019) (same).  *See also Grand Wireless*, 748 F.3d at 8 (enforcing a broad arbitration clause that covers claims that "arise out of or relate to" the agreement at issue); *Lebovits* v. *Cavalry Portfolio Servs., LLC*, 2021 WL 1198967, at *7 (S.D.N.Y. Mar. 29, 2021) ("With broad agreements, arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" (citation omitted)).

The Pharmacy Plaintiffs agreed to a broad arbitration provision:  "Any and all disputes between Provider and Caremark . . . , including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks."  Ex. 3, Provider Manual; *see RX Pros, Inc.* v. *CVS Health Corp.*, 2016 WL 316867, at *4 (W.D. La. Jan. 26, 2016) (granting motion to compel arbitration under the same arbitration provision applicable here because the "arbitration agreement is broad and encompasses any and all disputes related to the provider manual"); *Burton's Pharm., Inc.* v. *CVS Caremark Corp.*, 2015 WL 5430354, at *2, *12 (M.D.N.C. Sept. 15, 2015) (granting motion to compel arbitration under the same arbitration provision applicable here because it was a "'broad' arbitration clause . . . 'capable of an expansive reach'" that included "claims not only arising out of the Plaintiffs' agreements but also claims that are 'connected with' those agreements" (citations omitted)); *Muecke Co., Inc.* v. *CVS Caremark Corp.*, 2012 WL 12535439, at *22 (S.D. Tex. Feb. 22, 2012) ("Here, the arbitration provision includes both 'arising out of' and 'in connection with' and, thus covers a broad range of types of

disputes with nearly any relationship to the provider agreement.").  The claim asserted in the CAC pertains to alleged reductions in Caremark's reimbursements to pharmacies for dispensing generic drugs, and the effects of those reductions on the Pharmacy Plaintiffs.  *See, e.g.*, CAC at ¶¶ 162, 163, 166–67, 304.  Plaintiff Pharmacies also allege that it is because of their Provider Agreements that they "had no choice but to be subjected to the ISP and its artificially low pricing.  Under their agreements with the PBM Defendants, they must fill the generic drug prescriptions of patients who present their insurance cards at the pharmacy counter."  *Id.* at ¶ 172.  They also dispute that their agreements with Caremark disclose the GoodRx ISP or how it applies.  *Id.* at ¶ 181.  The Pharmacy Plaintiffs' claims thus constitute a dispute between the Pharmacy Plaintiffs and Caremark "relating . . . to" the Pharmacy Plaintiffs' participation in Caremark's networks.

A court already has granted a motion to compel arbitration of a Sherman Act claim relating to Caremark's fee structure.  *Osterhaus Pharm. Inc.* v. *CVS Health Corp.*, 2025 WL 472731 (D. Ariz. Feb. 12, 2025); *Osterhaus Pharm. Inc.* v. *CVS Health Corp.*, 2024 WL 4785818 (D. Ariz. Nov. 13, 2024).  Other courts considering the same arbitration provision also have compelled arbitration where the dispute involved Caremark's reimbursement of pharmacy claims.  *See, e.g.*, *Caremark, LLC* v. *Choctaw Nation*, 104 F.4th 81 (9th Cir. 2024) (affirming district court's order compelling arbitration in case alleging that Caremark unlawfully denied reimbursement claims); *Bowie's Priority Care Pharm.¸ LLC* v. *CaremarkPCS, LLC*, 2018 WL 1964596 (N.D. Ala. Apr. 26, 2018) (granting motion to compel arbitration of claim that Caremark had improperly withheld reimbursements from pharmacies).

Accordingly, Caremark's motion to compel arbitration and to stay the case against Caremark should be granted.  As the Supreme Court has instructed, "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of

the FAA compels the court to stay the proceeding." *Smith* v. *Spizzirri*, 601 U.S. 472, 475–76 (2024).

## II.    THE CLAIM BY THE ASSOCIATION PLAINIFFS SHOULD BE DISMISSED

The Association Plaintiffs seek to represent and advance the claims of their pharmacy members.  They base their Sherman Act claim on the allegation that *their members* have been injured by Defendants' alleged antitrust violation: "NCPA Member Pharmacies" and "PARD members were required to pay additional transaction fees, in addition to receiving artificial reduced payments for the drugs they dispensed," as a result of which they "suffered economic injury to their business or property and deprivation of the benefit of free and fair competition."  CAC at ¶¶ 41–42.  That is word for word the same injury alleged to have been suffered by the Pharmacy Plaintiffs: each was "required to pay additional transaction fees, in addition to receiving artificially reduced payments for the drugs it dispensed," and as a result "ha[ve] suffered economic injury to its business or property and deprivation of the benefit of free and fair competition."  *Id.* at ¶¶ 37–38, 40.

In other words, the Associations do not allege that *they* were uniquely or directly injured by any antitrust violation and do not seek to be compensated for any antitrust violation.  Rather, they have sued merely as purported representatives of their pharmacy members.  And that is precisely why their claims should be dismissed:  "Associations suing in a representative capacity are bound by the same limitations that bind their members." *Pa. Chiropractic Ass'n* v. *Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 743–44 (N.D. Ill. 2010) (*citing Arizonans for Off. Engl.* v. *Arizona*, 520 U.S. 43, 65–66 (1997)).[8]  If an association's members have no right to litigate, the

---

[8] As the Supreme Court has made clear, an "association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim

association does not either.  "Therefore, if an association's members are bound to arbitrate," the association cannot sue in court.  *Pa. Chiropractic*, 713 F. Supp. 2d at 744 (citing *Klay* v. *All Defs.*, 389 F.3d 1191, 1202–03 (11th Cir. 2004)).  As one court explained, "it cannot be more clear that any arbitration agreement which binds the individual members of [the membership association] would likewise be binding upon [the association] suing in a representational capacity."  Ruling on Pet. to Compel Arb. 10–11, *Dr.'s Assocs., Inc.* v. *Downey*, No. 3:06-cv-1170 (D. Conn. Feb. 12, 2007) (citation omitted).[9]

Permitting the Associations to proceed in this action against Caremark would allow the member pharmacies to dodge their arbitration agreements with Caremark by having the Associations front for them in court.  This would "violate their arbitration clauses and undermine the federal policy favoring arbitration by permitting [Plaintiffs] to use a surrogate organization to bypass their arbitration agreements."  *Id.* at 11; *see also Md. Optometric Assoc.* v. *Davis Vision, Inc.*, 2004 WL 7330337, at *2 (D. Md. Dec. 21, 2004) (association members bound by arbitration cannot circumvent the provision by suing through an association).  The member pharmacies cannot expand their rights, or escape their obligations to Caremark, by joining or forming a trade association.

Were that not sufficient to dismiss the Association Plaintiffs' claim, the pharmacies agreed in the Provider Agreements that:  "No dispute between Provider and Caremark may be pursued or resolved as part of a class action, private attorney general, or other representative action or proceeding."  Ex. 3 at § 15.07, Provider Manual.  The Provider Agreement states that a second

---

asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

[9] A copy of the Ruling is attached as <u>Exhibit 1</u> to the concurrently-filed Declaration of Jacqueline P. Rubin, Esq.

time for good measure: "All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated proceedings." *Id.* Where member contracts clearly require "arbitration on an individual basis," *id.*, associations may not seek to arbitrate on a class or representative basis. *Fantastic Sam's Franchise Corp.* v. *FSRO Ass'n*, 824 F. Supp. 2d 221, 225 (D. Mass. 2011), *aff'd*, 683 F.3d 18 (1st Cir. 2012). In the end, the Association Plaintiffs are trying to circumvent their members' Provider Agreements, as well as the class action procedure itself. For example, the pharmacies owned by the Chair and President-Elect of the NCPA have entered into Provider Agreements with Caremark that contain mandatory and binding arbitration provisions. McCall Decl. at ¶¶ 71–76. Furthermore, if the Court grants class certification, the Association members already agreed not to be part of any class action. If the Court denies class certification, the Associations cannot act as titular pharmacy representatives, as that would subvert both the denial of class certification and the terms of the Provider Agreements. No matter how the Association Plaintiffs portray their role in this would-be class action, they do not belong here and their Sherman Act claim should be dismissed.

## III.    PLAINTIFF ONERORX'S SHERMAN ACT CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING

For antitrust standing purposes, a parent company is a stockholder and thus not directly injured by injuries to its subsidiaries. As such, a parent corporation like OneroRx may not assert an antitrust claim on behalf of its subsidiaries. *Motorola Mobility LLC* v. *AU Optronics Corp.*, 775 F.3d 816, 820–21 (7th Cir. 2015); *see Info. Res., Inc.* v. *Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411, 413–15 (S.D.N.Y. 2000). As a matter of law, a plaintiff lacks standing to bring an antitrust action when, at best, its injuries are indirect or derive from the injuries to another entity: "'Merely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing.'" *G.K.A.*

*Beverage Corp.* v. *Honickman*, 55 F.3d 762, 766 (2d Cir.1995) (quoting *Sw. Suburban Bd. of Realtors, Inc.* v. *Beverly Area Plan. Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987)).  Thus, as the parent company of the individual pharmacies, OneroRx lacks standing to bring antitrust claims against Caremark.

The parties who might have standing are the subsidiary pharmacies, *Motorola Mobility LLC*, 775 F.3d 820, but each of those pharmacies who "filled generic prescriptions for insured patients that were subject to the ISP Scheme," CAC at ¶ 39, has entered into a Provider Agreement with Caremark, thereby agreeing to arbitrate any claims against Caremark and agreeing not to litigate in court, McCall Decl. at ¶ 65.

Furthermore, each of those Provider Agreements provides that, "Neither party may assign the Agreement without the prior written consent of the other party, provided, however, that Caremark may, without consent assign the Agreement to any direct or indirect parent, subsidiary, or affiliated company, or to a successor company." Ex. 3, Provider Manual § 15.01.  Thus, these OneroRx subsidiaries are prohibited from conferring standing on OneroRx by assigning their claims (if that is what they have tried to do).  And even if the subsidiaries' rights under the Provider Agreement were assignable, the arbitration agreement to which the subsidiaries agreed would travel with their claims and be binding on OneroRx as assignee. *Comedy Club, Inc.* v. *Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (arbitration agreement is binding on assignee of a claim); *Sourcing Unlimited, Inc.* v. *Asimco Int'l Inc.*, 526 F.3d 38, 46 n.8 (1st Cir. 2008) ("Courts routinely recognize that arbitration agreements may require arbitration even where all parties to the dispute did not sign the arbitration agreement.").[10]

---

[10] Arizona courts recognize that non-signatories can be bound to arbitrate under ordinary contract and agency principle, like equitable estoppel. *See, e.g., Local 640 Trs.* v. *CIGNA Health & Life. Ins. Co.*, 2021 WL 3290534, *4 (D. Ariz. Aug. 2, 2021).  A non-signatory to an agreement

Accordingly, any claims by or on behalf of these pharmacies would have to be ordered to arbitration.  As such, the Sherman Act claim asserted by OneroRx against Caremark should be dismissed.

<u>**CONCLUSION**</u>

For these reasons, this Court should grant Caremark's Motion to Compel Arbitration and stay this action as against Caremark pending arbitration by the Pharmacy Plaintiffs, and should grant Caremark's Motion to Dismiss the claims of the Association Plaintiffs and OneroRx against Caremark.

---

requiring arbitration may be estopped - - that is, barred - - from avoiding arbitration if it is asserting claims that must be determined by reference to the agreement, or is claiming or has received direct benefits from the contract.  *Id.*  Here, OneroRx's claims in this litigation stem directly from the Provider Agreements that its subsidiary pharmacies have with Caremark, and the benefits that it received under those agreements.  *See infra* at 13–14.  It is therefore estopped from using those Provider Agreements as the basis for its purported antitrust claims against Caremark while, at the same time, disclaiming their arbitration clause.

## <u>ORAL ARGUMENT</u>

Pursuant to LR Cv 7(c), Defendants respectfully request in-person oral argument, estimated at 60 minutes, on this motion.

Dated: November 7, 2025

Respectfully submitted,

*/s/ Robert A. Atkins*
Robert A. Atkins
Jacqueline P. Rubin
Natalie M. Pita
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
ratkins@paulweiss.com
jrubin@paulweiss.com
npita@paulweiss.com

*/s/ Rebecca Briggs*
Rebecca Briggs
HINCKLEY, ALLEN & SNYDER LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
rbriggs@hinckleyallen.com

*Attorneys for Defendants CaremarkPCS
Health, L.L.C.; Caremark, L.L.C.;
CaremarkPCS, L.L.C.; and CVS Health
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on November 7, 2025, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Rebecca Briggs*
Rebecca Briggs