# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DOCTOR'S ASSOCIATES, INC.,    :
       Plaintiff,       :
                :     Case No. 3:06-cv-1170 (PCD) (Lead Case)
       v.         :     (Consolidated Cases)
                :
FREDERICK W. DOWNEY, et al.,    :
       Defendants.     :

## RULING ON PLAINTIFF'S PETITIONS TO COMPEL ARBITRATION AND MOTIONS FOR PRELIMINARY INJUNCTION

_____In July and August, 2006, Plaintiff Doctor's Associates, Inc. ("DAI") petitioned this Court to compel arbitration [Doc. No. 1] against Defendants Frederick W. Downey, Alan D. Becker, Kevin F. Brough, David B. Wehr, James A. Prouse, Keith H. Bruns, Bobby J. Hook, Keith R. Miller, Rajender K. Pannu, and Lyle M. Scott. DAI also filed Motions for Preliminary Injunction [Doc. Nos. 2, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23], asking this Court to enjoin the Defendants, nonparty North American Association of Subway Franchisees ("NAASF"), and/or any third party from prosecuting the action pending in the Connecticut Superior Court, North American Association of Subway Franchisees, Inc. v. Doctor's Associates, Inc., Docket No. CV-06-4021494-S, and to enjoin Defendants and the NAASF from filing any other action that arises out of or relates to the franchise agreements between DAI and Defendants. For the reasons stated herein, Plaintiff's Petition to Compel Arbitration is **granted**, and Plaintiff's Motions for Preliminary Injunction are **granted**.

## I.    BACKGROUND[1]

     Plaintiff DAI, a Florida corporation, is the national franchisor of Subway sandwich shops.

---

[1] The facts described herein are based upon the undisputed facts presented in Petitioner's Motions to Compel Arbitration and the parties' subsequent briefs.

Defendants are each Subway franchisees.  DAI entered into standard written franchise agreements with each Defendant, permitting them to operate Subway shops.  The standard franchise agreement contains an arbitration clause (¶ 10a) which provides that "[a]ny dispute, controversy or claim arising out of relating to this Agreement or the breach thereof shall be settled by arbitration."  (Pl.'s Pet. to Compel Arbitration, Ex. A, August 31, 2004 Franchise Agreement, ¶ 10a.)  The standard franchise agreement also contains a provision that amends all other franchise agreements between DAI and the franchisee to contain substantially the same material terms as the most-recently executed franchise agreement between the parties.  (Id. ¶ 14.)

Defendants are all members of the Board of Directors of the North American Association of Subway Franchisees, Inc. ("NAASF"), an organization that represents approximately 5,285 present and prospective Subway franchisees in North America who collectively own approximately 14,560 Subway restaurants.  (Pl.'s Pet. to Compel Arbitration, Ex. B, NAASF Compl. ¶ 3.)  On July 14, 2006, NAASF filed an action, pursuant to Conn. Practice Book § 17-54 et seq. and Conn. Gen. Stat. § 52-29, in the Superior Court for the Judicial District of New Haven, North American Association of Subway Franchisees, Inc. v. Doctor's Associates, Inc., Docket No. CV-06-4021494-S ("the NAASF lawsuit"), against DAI on behalf of "its members who have an actual controversy with DAI."  (Pl.'s Pet. to Compel Arbitration, Ex. B, NAASF Compl. ¶ 6.)  NAASF requests the state court to "declare the rights and legal obligations that its members and DAI have pursuant to the applicable agreements."  (Id.)  Specifically, NAASF seeks a declaratory judgment that DAI's newest franchise agreement (the "2006 Franchise Agreement"), and DAI's requirement that any person renewing a current franchise agreement or acquiring a new or existing Subway franchise sign the 2006 Franchise Agreement, will cause

-2-

DAI to breach its obligations as set forth in the current form of the franchise agreement and/or its agreement with the Board of Directors of the Subway Franchisee Advertising Fund Trust ("SFAFT"). (Id. ¶ 2.) SFAFT is a trust created by DAI in 1990 for the purpose of funding group advertising and promotion of Subway shops. (Id. ¶¶ 13, 14.) According to NAASF, the 2005 Franchise Agreement, as well as many of its predecessors, provided that a franchisee would pay 4.5% of its actual gross sales into the SFAFT. (Id. ¶ 13.) The 2006 Franchise Agreement requires a franchisee to instead pay 4.5% of its actual gross sales directly to DAI and authorizes DAI to require a franchisee to place an additional $10,000 into a marketing assistance fund controlled by DAI. (Id. ¶ 22.) NAASF alleges that a series of other provisions in the 2006 Franchise Agreements change the terms of prior agreements, and NAASF claims that these changes constitute breaches of DAI's prior agreements with its franchisees and DAI's agreement with SFAFT. (See id. ¶¶ 16, 23-27, 40, 41.)

After NAASF sued DAI in state court, DAI brought eleven actions in this Court under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel Defendants to arbitrate any claims they may have against DAI. DAI also moved to enjoin the NAASF lawsuit. These cases were consolidated under the lead case, 3:06cv1170 Doctor's Associates, Inc. v. Downey.[2] This matter is another in a long series of disputes between DAI and various Subway franchisees

---

[2] The following cases were consolidated: 3:06cv1170 Doctor's Assocs., Inc. v. Downey; 3:06cv1180 Doctor's Assocs., Inc. v. Brough; 3:06cv1193 Doctor's Assocs., Inc. v. Becker; 3:06cv1201 Doctor's Assocs., Inc. v. Wehr; 3:06cv1199 Doctor's Assocs., Inc. v. Prouse; 3:06cv1188 Doctor's Assocs., Inc. v. Bruns; 3:06cv1179 Doctor's Assocs. Inc. v. Hook; 3:06cv1120 Doctor's Assocs., Inc. v. Miller; 3:06cv1189 Doctor's Assocs., Inc. v. Pannu; 3:06cv1194 Doctor's Assocs., Inc. v. Scott. Since the commencement of this action, Defendant franchisee Resley withdrew his involvement from NAASF and therefore was dismissed from this action, 3:06cv1190 Doctor's Assocs., Inc. v. Resley.

regarding their obligation to arbitrate under the franchise agreement. The latest wrinkle introduced by franchisees' counsel is that a membership association, representing the interests of franchisees members, filed the state court action against DAI without naming individual franchisees as parties. DAI protests that NAASF's lawsuit is simply a device enabling Defendant franchisees to avoid their obligations to arbitrate. Defendants argue in turn that DAI is the party trying to evade a suit through artful pleading by filing petitions to compel arbitration against only the NAASF board members who are diverse with DAI. (See Defs.' Resp. to Mot. for Prelim. Inj. at 2, n.1.) Defendants claim that this Court lacks subject matter jurisdiction because no amount in controversy in excess of $75,000 exists for each petition to compel arbitration. Defendants further oppose DAI's motions to compel arbitration on the grounds that none of the Defendants has asserted claims on his or her own behalf in the NAASF lawsuit and NAASF is not a party to a Franchise Agreement with the arbitration clause. They oppose DAI's preliminary injunction motions on the grounds that Rule 65(d) does not authorize the Court to enjoin a non-party such as NAASF and the Anti-Injunction Statues does not authorize the Court to enjoin a state court proceeding.

## II.  DISCUSSION

### A.  Petitions to Compel Arbitration

#### 1.  Subject Matter Jurisdiction

Defendants maintain that this Court lacks subject matter jurisdiction over DAI's petitions to compel arbitration. Section 4 of the Federal Arbitration Act ("FAA") grants this Court jurisdiction to hear petitions to compel arbitration if the Court "would have jurisdiction under Title 28, in a civil action ... of the subject matter of the suit arising out of the controversy

between the parties...." 9 U.S.C. § 4. Accordingly, "there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 444 (2d Cir. 1995) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)). In this case, DAI asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the Court to have diversity jurisdiction over a claim brought pursuant to Section 4 of the FAA, there must be complete diversity of citizenship and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(b). Accordingly, DAI must allege an amount in controversy in excess of $75,000 for each of the eleven Defendants named in each of its eleven petitions to compel arbitration. "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." A.F.A. Tours v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) (citation and internal quotation marks omitted).

Plaintiff alleges that the matter in controversy exceeds the value of $75,000 required for diversity jurisdiction under 28 U.S.C. § 1332 (see Pl.'s Pet. to Compel Arbitration ¶ 13), and Defendants have not shown to a legal certainty that the value at stake is actually less than the requisite amount. To determine the amount in controversy in the context of a petition to compel arbitration, the Court considers the value of the award that would be sought in the desired arbitration. "The amount in controversy is the difference between winning and losing the underlying arbitration." Doctor's Assocs., Inc. v. Hollingsworth, 949 F. Supp. 77, 82 (D. Conn. 1996) (citations omitted). See also Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998) (citing Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957)) (district courts must "look through to the possible award resulting from the desired arbitration,

since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award."). The amount in controversy is "calculated from the plaintiff's standpoint," and "the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." <u>Kheel v. Port of N.Y. Auth.</u>, 457 F.2d 46, 49 (2d Cir. 1972) (citations omitted).

Here, the cost of winning or losing the desired arbitration turns on the value of the relief sought in the NAASF lawsuit. In the NAASF lawsuit, NAASF moved the state court to enjoin DAI from causing the franchisees' payments to the Subway Franchisee Advertising Fund Trust (SFAFT) to be reduced or redirected elsewhere and to order the placement of all advertising monies collected by DAI pursuant to the 2006 Franchise Agreement into a constructive trust for the benefit of the SFAFT trustees and NAASF. (<u>See</u> NAASF Compl. at 50.) In its petitions to compel arbitration, DAI alleges that the franchisees' contributions to SFAFT are approximately $500 million. (Pl.'s Pet. to Compel Arbitration ¶ 13.) This amount, far in excess of that required for diversity jurisdiction, may be considered the value of the object of the underlying litigation on which this action is based. Defendants contend that the SFAFT issue in the NAASF lawsuit does not concern the amount of franchisees' advertising payments but rather the destination of such payments, either to DAI or to SFAFT for the benefit of the franchisees. From the standpoint of the Plaintiff, however, the resolution of the issue of the payments' destination may mean the difference of $500 million in payments to DAI. One object of the NAASF lawsuit, insofar as DAI is concerned, is its winning or losing $500 million in advertising payments, an amount in controversy which more than satisfies the diversity jurisdiction requirement.

NAASF also seeks an order from the State Court rescinding all 2006 Franchise

Agreements and allowing the franchisees the right to replace the 2006 Franchise Agreement with an agreement substantially similar to the 2005 Franchise Agreement. (See NAASF Compl. at 50.) According to DAI, based on start-up investments and total gross sales historically earned in each store, a constructive termination of any one of the 69 franchises owned by the eleven Defendants would cost DAI far more than $75,000. (Pl.'s Reply at 4; Affidavit of William A. Darrin, Jr. ("Darrin Aff.") ¶¶ 6, 7.) Furthermore, DAI has executed 819 new agreements and amended 1859 existing agreements for a total of 2,678 franchise contracts executed in the 2006 form, with franchise fees ranging from $6,000 to $12,500 for each agreement. DAI has collected anywhere from $4.9 million to $10.2 million in franchise fees on the 819 new agreements, and it will collect annual royalties and advertising contributions amounting to approximately $35.8 million under the new agreements. (Pl.'s Reply at 5; Darrin Aff. ¶¶ 10, 11.) The prospect of rescinding the 2006 Franchise Agreement therefore puts a substantial amount of DAI's investments and fees in jeopardy and, accordingly, establishes an amount in controversy in excess of the requisite $75,000. Although the value of forcing DAI to rescind all of its 2006 Franchise Agreements cannot be precisely measured at this time, the Court may accept Plaintiff's assertions that diversity jurisdiction exists where "it is impossible to conclude to a legal certainty on the current record that the amount in controversy is less than the jurisdictional amount." Hollingsworth, 949 F. Supp. at 83.

Defendants' other arguments contesting subject matter jurisdiction are unavailing. Defendants maintain that the Court lacks jurisdiction because the NAASF lawsuit seeks a declaration of rights and legal obligations, not damages, and so the underlying state action would not result in damages in excess of $75,000 to satisfy diversity jurisdiction. (Defs.' Resp. at 7.)

However, as stated above, federal district courts have diversity jurisdiction over actions seeking declaratory relief where the object of the underlying litigation exceeds $75,000, even where parties do not seek monetary damages. "[T]he amount in controversy, in an action for declaratory ... relief, is the value of the right to be protected or the extent of the injury to be prevented." Doctors Assocs. v. Hollingsworth, 949 F. Supp. at 82 (internal citations omitted). See also Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief it is well established that the amount in controversy is measured by the value of the object of the litigation."); AFA Tours, 937 F.2d at 87. Defendants also maintain that the amount in controversy cannot be met with respect to Defendants Becker and Miller because their franchise agreements prohibit damages claims in excess of $50,000. However, not only is the damages cap irrelevant where NAASF is not suing for damages, but the allegations in the Complaint control the calculation of the amount in controversy even where the franchise agreement has a damages cap. See, e.g., Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160-61 (2d Cir. 1998).

Accordingly, this Court has subject matter jurisdiction pursuant to § 1332 to review the Plaintiff's petitions to compel arbitration.

### 2. Compelling Arbitration of NAASF's Claims

DAI petitions the Court to compel arbitration on the basis that NAASF is pursuing its claims in state court only in its representative capacity on behalf of the individual Defendant franchisees, all of whom are bound by the arbitration clause of the Franchise Agreements. DAI alleges that Defendants are using this "surrogate association" that they control as a means of avoiding their obligation to arbitrate under the Franchise Agreements. (Pl.'s Mem. in Supp. of

Mot. for Prelim. Inj. at 2.)  According to DAI, allowing the NAASF lawsuit to proceed rather

than compelling Defendants to arbitrate would contradict the Federal Arbitration Act, 9 U.S.C. §

1 et seq.  Defendants maintain that, because NAASF is not a party to a Franchise Agreement with

the arbitration clause, DAI is not an "aggrieved party" who can compel arbitration under Section

4.  Defendants also contend that, because the Defendants did not assert claims in state court, they

cannot be compelled to arbitrate.

A strong federal policy exists requiring rigorous enforcement of agreements to arbitrate,

see Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270 (1996); Mastrobuono v.

Shearson Lehman Hutton, Inc., 514 U.S. 52, 55-56 (1995), and the FAA provides that arbitration

agreements in contracts involving interstate commerce are presumptively "valid, irrevocable, and

enforceable."  9 U.S.C. § 2.  As a matter of law, "any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration."  Collins & Aikman Prods. Co. v. Bldg. Sys.,

Inc., 58 F.3d 16, 19 (2d Cir. 1995) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. at 24-25).  See also Conntech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102

F.3d 677, 684 (2d Cir. 1996).  In this case, the Franchise Agreement obligates franchisees to

arbitrate "any controversy or claim arising out of or relating to [the franchise] Agreement or the

breach thereof."  (2006 Franchise Agreement ¶ 10a.)  This broad language requires arbitration

when the allegations in the underlying claims "'touch matters' covered by the parties' ...

agreements ..., whatever the legal labels attached to them."  Genesco, Inc. v. T. Kakiuchi & Co.,

Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (citing Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc., 473 U.S. 613, 624 n.13 (1985).

The salient issue in a petition to compel arbitration is not whether the persons involved

are parties to the arbitration agreement but whether the claims in dispute are covered by the arbitration agreement. Section 3 of the FAA "plainly requires that a district court stay litigation where issues presented in the litigation are the subject of an arbitration agreement." <u>Doctor's Assocs., Inc. v. Stuart</u>, 85 F.3d 975, 984 (2d Cir. 1996) (citing <u>Kroll v. Doctor's Assocs., Inc.</u>, 3 F.3d 1167, 1171 (7th Cir. 1993)). The issues presented in the NAASF lawsuit appear to be the subject of the arbitration clause of the Franchise Agreements. <u>See</u> <u>Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.</u>, 58 F.3d at 19. NAASF alleges that the 2006 Franchise Agreement, and DAI's requirement that franchisee members of NAASF sign the 2006 Franchise Agreement when renewing their franchise agreements or opening new stores, will cause DAI to breach its obligations set forth in the current form of the franchise agreement. (NAASF Compl. ¶ 2.) This claim is clearly subject to the arbitration provision requiring arbitration of any claim "arising out of or relating to" the Franchise Agreement or breach thereof. (2006 Franchise Agreement ¶ 10a.) NAASF's claims regarding DAI's alleged violations of the SFAFT agreement also sufficiently relate to the Franchise Agreement to fall within the scope of the arbitration provision. See <u>Doctor's Assocs., Inc. v. Hollingsworth</u>, 949 F. Supp. at 84 ("the SFAFT is directly related to the Franchise Agreement," and claims regarding the handling of SFAFT, "created in connection with the Franchise Agreement," arise out of and relate to the Franchise Agreement and are therefore subject to arbitration.). The claims in the NAASF lawsuit are therefore subject to arbitration pursuant to Section 4 of the FAA and Paragraph 10a of the Franchise Agreements.

The fact that the NAASF lawsuit plaintiff is not itself a party to the Franchise Agreement does not alter the Court's determination that the NAASF claims are subject to arbitration. Defendants maintain that compelling arbitration requires the Court to impute the actions of

NAASF to the Defendants, a move that is contrary to the claims in the NAASF lawsuit and to the underlying law related to associational standing. To support their position, Defendants cite case law granting standing to associations to sue on behalf of their members. However, NAASF's standing to pursue its claims in state court, or to pursue claims in federal court, for that matter, is not at issue here. Rather, the issue before the Court is whether the arbitration clause that obligates Defendants to pursue their disputes with DAI in arbitration also obligates the membership association representing Defendants' interests in a state court action against DAI. The resolution of this issue is clear: "Associations suing in a representative capacity generally are bound by the same limitations and obligations as the members that they represent." In re Managed Care Litigation, No. 00-MD-1334, 2003 WL 22410373, at *9 (S.D. Fla. Sept. 15, 2003). See also Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. at 342-43; Warth v. Seldin, 422 U.S. 490, 511 (1975); Penn. Psychiatric Soc'y v. Green Spring Health Servs. Inc., No. Civ. A. 99-937, 2000 WL 33365907, at *7 (W.D. Pa. March 24, 2000), rev'd on other grounds, 280 F.3d 278 (3d Cir. 2002). "[I]t cannot be more clear that any arbitration agreement which binds the individual members of [the membership association] would likewise be binding upon [the association] suing in a representational capacity." Id. Defendants' obligations to arbitrate their disputes with DAI therefore obligates NAASF to arbitrate disputes with DAI raised on Defendants' behalf. To hold otherwise would violate the arbitration clause and undermine the federal policy favoring arbitration by permitting Defendants to use a surrogate organization to bypass their arbitration agreements and pursue claims in court that should be resolved through litigation. "[A]voidance of an arbitration provision by suing through a surrogate is simply not an appropriate use of associational standing." Id. A district court must compel arbitration even in

-11-

disputes concerning persons who are not parties to the arbitration agreement "if the litigation is an attempt to evade the agreed-upon resolution of their disputes in the arbitration forum by introducing the identical controversy against a party who is ultimately liable for the arbitrating party's acts." Kroll v. Doctor's Assocs., Inc., 3 F.3d at 1171 (internal citations omitted). See also Doctor's Assocs., Inc. v. Hollingsworth, 949 F. Supp. at 83 ("[T]he acts of employees of a party to an arbitration agreement are arbitrable as long as the challenged acts fall within the scope of the customer agreement."); Doctor's Assocs., Inc. v. Stuart, 85 F.3d at 985 (upholding district court's injunction of state court action against DAI and its owners that was "a bald attempt to evade its duty to arbitrate with DAI."); Mosca v. Doctor's Assocs., Inc., 852 F. Supp. 152, 155 (E.D.N.Y. 1993) ("This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity."). Accordingly, the claims in the NAASF lawsuit "arise out of" and "relate to" the franchise agreement and are therefore subject to arbitration.

**B.  Motions for Preliminary Injunction**

Plaintiff DAI moves pursuant to Fed. R. Civ. P. 65 for an injunction enjoining Defendants, NAASF, and any third party from prosecuting the NAASF lawsuit until further order of the Court and enjoining Defendants and NAASF from filing any other action that arises out of or relates to the Franchise Agreements. Defendants objects on the ground that an injunction against the State Court lawsuit would not be proper under either Rule 65(d) or the Anti-Injunction Act.

DAI moves the Court to enjoin the NAASF lawsuit in its entirety, even though Defendants are not named parties in that action and NAASF is not compelled to arbitrate its

claims. Rule 65(d) provides that an order granting an injunction is binding on all others with

notice of the order who are "in active concert or participation with" the parties to the action."

Fed. R. Civ. P. Rule 65(d). DAI argues that because NAASF does not raise claims in state court

on its own behalf but only asserts claims on behalf of its members, among whom are Defendants,

NAASF is therefore necessarily "in active concert or participation" with Defendants. The fact

that NAASF has associational standing to sue on behalf of Defendants and its other members

does not alone confer a connection between Defendants and NAASF for purposes of compelling

arbitration or enjoining the action. See Davis Vision, Inc. v. Maryland Optometric Ass'n, 187

Fed. Appx. 299, 303 (4th Cir. 2006) ("A party's capacity to arbitrate is analytically distinct from

its standing to sue in federal court."). However, in this case, there is reason to conclude that

NAASF is in active concert with the Defendants. Defendants are not only members of NAASF

but members of NAASF's board of directors. In addition to the fact that the NAASF lawsuit is

solely pursuing the claims of Defendants and other NAASF members (see NAASF Compl. ¶ 6),

the Defendants exert direct control over NAASF's pursuit of its members claims in the State

Court action through their roles on the NAASF Board of Directors. The Court therefore

concludes that NAASF is in sufficient "active concert or participation" with Defendants to fall

within the ambit of Rule 65(d) and to be enjoined from pursuing the NAASF lawsuit at this time.

The Court granted a similar request for injunctive relief in Doctor's Associates v.

Hollingsworth. There, franchisees sued DAI in state court, and DAI petitioned this Court to

compel arbitration with the non-Florida franchisees with whom DAI had diversity and who were

named federal defendants. The Court granted the petitions to compel arbitration and enjoined the

entire state court lawsuit, including the claims brought by the Florida franchisees. The Court

concluded that an injunction against the Florida franchisees was also necessary because they were pressing claims on behalf of the federal defendants and therefore fell within the ambit of Rule 65(d). 949 F. Supp. 77. at 86. A similar relationship exists in this case between NAASF and the Defendants. Although NAASF is a separate legal entity with discrete rights and obligations, it is not pursuing any legal claims independent from the issues which are subject to arbitration. Because NAASF is only pressing claims on behalf of Defendants which should be resolved through arbitration, "continued litigation of these issues in parallel state proceedings will undermine, if not moot," the order compelling arbitration. Id. at 86 (citing Doctor's Assocs., Inc. v. Distajo, 870 F. Supp. 34, 36 (D. Conn. 1994), aff'd in part, rev'd in part, 66 F.3d 438 (2d Cir. 1995), cert. denied, 517 U.S. 1120 (1996)). Accordingly, the NAASF lawsuit should be enjoined pending arbitration between DAI and Defendants.

In their objection to DAI's motions for a preliminary injunction, Defendants contend that the anti-injunction statute, 28 U.S.C. § 2283, prohibits the Court from enjoining the NAASF lawsuit. Section 22283 provides in relevant part: "A court of the United States may not grant an injunction to stay proceedings in a State court except ... where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." § 2283. Although these narrow exceptions are not to be enlarged by loose statutory construction, see Atl. Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs, 398 U.S. 281, 297 (1970); Standard Microsystems Corp. v. Tex. Instruments Inc., 916 F.2d 58, 60 (2d Cir. 1990), they are "meant to give sufficient flexibility that a federal court, as a court of equity, may ... deal adequately with the situation at hand." Doctor's Assocs., Inc. v. Distajo, 944 F. Supp. 1007, 1009 (D. Conn. 1996) (internal citations omitted). In this case, because the issues sought to be litigated by NAASF fall within the scope of the arbitration clause

and are therefore subject to arbitration, NAASF must be enjoined from prosecuting the state court action in order to effectuate the judgment compelling arbitration.  See Doctor's Assocs., Inc. v. Hollingsworth, 949 F. Supp. at 85.  "Continued litigation of these issues in parallel state proceedings will undermine, if not moot, this ruling."  Id. at 86 (citing Doctor's Assocs., Inc. v. Distajo, 870 F. Supp. at 36).  Accordingly, an injunction will enter enjoining Defendant franchisees, the NAASF, and/or any third party from prosecuting the state court action pending in Connecticut Superior Court, New Haven, Connecticut, entitled North American Association of Subway Franchisees, Inc. v. Doctor's Associates, Inc., Docket No. CV-06-4-21494-S, until further order of this Court.

IV.    **CONCLUSION**

        For the foregoing reasons, Plaintiff's Petition to Compel Arbitration [Doc. No. 1] is **granted.**  Plaintiff's Motions for Preliminary Injunction [Doc. Nos. 2, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23] are **granted.**  Defendants, the NAASF, and/or any third party are hereby enjoined, unitl further order of this Court, from prosecuting North American Association of Subway Franchisees, Inc. v. Doctor's Associates, Inc., Docket No. CV-06-4-21494-S, in Connecticut Superior Court.  The parties are hereby ordered to show cause on or before February 27, 2007, why this case should not be dismissed without prejudice, reserving the right of all parties to reopen it for the purpose of resolving any issue regarding the injunction or enforcing an arbitration award.

        SO ORDERED.

        Dated at New Haven, Connecticut, this 12th day of February, 2007.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court