**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re GoodRx and Pharmacy Benefit Manager Antitrust Litigation (No. II)<br><br>This Document Applies To:<br><br>ALL CASES | Case No.: 1:25-md-03148-MSM-AEM<br><br>MDL No. 3148 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants respectfully submit this Response to Plaintiffs' Notice of Supplemental Authority, ECF No. 182, which submits *Cornish-Adebiyi et al. v. Caesars Ent., Inc. et al.*, No. 24-3006, ECF No. 114 (3d Cir. July 29, 2026) in opposition to Defendants' Motion to Dismiss, ECF No. 134.

*Cornish* adds nothing to what has already been briefed. If anything, the case highlights the fatal defects in Plaintiffs' allegations. *Cornish* is, in all material respects, another *RealPage*—a case Plaintiffs invoke repeatedly in their opposition and that Defendants distinguished at length in the Reply. *See* Reply, ECF No. 172 at 8–10, 16–17, 26. It fits comfortably within the line of algorithmic-pricing decisions Plaintiffs have already asked this Court to apply, and it fails to bear on the case before this Court for the same reasons—fundamentally, this is not an algorithmic-pricing case.

The *Cornish* court's inference of a horizontal agreement rested on a confluence of features that likewise animated *RealPage*, *MultiPlan*, and *Duffy*. None is present here. First, the *Cornish*

algorithm pooled data from each casino-hotel with data of the same type provided by its competitors, and used those pooled inputs to generate "'optimal' [new] room rates." Slip op. 21–22. The ISPs do nothing of the sort. An ISP transaction is a comparison of two numbers—GoodRx's publicly available cash discount rate and the amount that a customer would pay out of pocket for medication if they used their insurance benefit through a PBM. Neither of these numbers is generated by any algorithm operating on pooled competitor data. Reply at 8–10. GoodRx does not share any contracted rate information with PBMs. Reply at 9 (quoting AC ¶ 149). Rather, it provides its own cash discount card rate already available to the public to a PBM so that the PBM can compare that rate to the out-of-pocket amount the consumer would otherwise pay, so that the PBM can ensure the consumer receives their medication for the lowest possible out-of-pocket cost available. *Id.*

Second, *Cornish* alleged a "stark change from how [casino-hotels] independently priced rooms for years," slip op. 9, followed by parallel and sudden increases of "$15 to $60" within just two years, *id.* at 28–29. The Third Circuit relied on that "sudden synchronous [upward] movement," notwithstanding declining occupancy, as circumstantial evidence of collusion. *Id.* at 29–30. Nothing comparable is alleged here. The reimbursement rates pharmacies receive for generic prescriptions are the same before and after any ISP transaction. AC ¶¶ 15, 155–56, 179–80. The ISPs do not create a new reimbursement rate; the applicable reimbursement rate is the rate that the pharmacy already agreed to receive from the adjudicating PBM. Additionally, there is no change in any price. The GoodRx cash discount price used in an ISP transaction is the same price GoodRx makes available through its traditional discount card program—a program Plaintiffs do not challenge. Again, the ISPs do not create a new price; they select between two preexisting

prices to which the pharmacy has already agreed and route the transaction to whichever vendor's out-of-pocket impact on the consumer is lower.

Third, the *Cornish* court's decision relied on the nonpublic character of the pooled data. The Third Circuit emphasized that the software aggregated "current, *non-public* room pricing and occupancy data" from competitors, and that each casino-hotel understood the recommendations were based on data "they and their co-defendants all were providing to the platform." Slip op. 9, 37 (emphasis added). The court tied that inference directly to confidentiality: information exchanges of "current pricing and occupancy data have great potential for anticompetitive collusion" where there is "rarely" a legitimate business justification for handing competitors "the benefit of commercially sensitive proprietary information." *Id.* at 40. Here, the ISPs do not permit or facilitate in any way the sharing of any confidential or proprietary rate information between PBMs. And the GoodRx cash discount rates provided to PBMs through the ISPs, are "available to anyone with a smartphone." AC ¶ 149; *see also* Reply at 9.

For each of these reasons, *Cornish* does not weigh in favor of denying the Motion to Dismiss. That case further highlights that Plaintiffs' allegations do *not* state a claim.

Dated: August 13, 2026

Respectfully submitted,

By: /s/ *Nicole J. Benjamin*

Nicole J. Benjamin (#7540)
John A. Tarantino (#2586)
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903-1345
jtarantino@apslaw.com
nbenjamin@apslaw.com

Alec Levy
Mike Bonanno
Meghan McCaffrey
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, DC 20005
aleclevy@quinnemanuel.com
mikebonanno@quinneemanuel.com
meghanmccaffrey@quinnemanuel.com

Anthony P. Alden
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
anthonyalden@quinnemanuel.com

*Attorneys for Defendants Express Scripts Inc., Express Scripts Holding Company, and The Cigna Group*

David J. Lender
Adam Hemlock
Jennifer Brooks Crozier
Alexandra Rose
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue New York, NY 10153
david.lender@weil.com
adam.hemlock@weil.com
jennifer.crozier@weil.com
alexandra.rose@weil.com

David Ramraj Singh
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
david.singh@weil.com

Matthew T. Oliverio (#3372)
Gina Renzulli Lemay (#7405)
OLIVERIO & MARCACCIO LLP
41 Romano Vineyard Way, Suite 6140
North Kingstown, RI 02852
mto@om-rilaw.com
grl@om-rilaw.com

*Attorneys for Defendants GoodRx, Inc. and GoodRx Holdings, Inc.*

Michael Leffel
Kirsten Dedrickson
FOLEY & LARDNER LLP
150 East Gilman Street, Suite 5000
Madison, WI 53703
mleffel@foley.com
kirsten.dedrickson@foley.com

Olivia Brooks
FOLEY & LARDNER LLP
777 East Wisconsin Ave.
Milwaukee, WI 53202
olivia.brooks@foley.com

Rebecca Briggs
HINCKLEY, ALLEN & SNYDER LLP
100 Westminster Street, Suite 1400
Providence, Rhode Island 02903
rbriggs@hinckleyallen.com

*Attorneys for Defendants Caremark, PCS Health, L.L.C.; Caremark, L.L.C.; CaremarkPCS, L.L.C.; and CVS Health Corporation*

Robert J. Herrington
GREENBERG TRAURIG LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
robert.herrington@gtlaw.com

Tonya Esposito
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tonya.Esposito@gtlaw.com

James Peacock
GREENBERG TRAURIG LLP
2200 Ross Ave., Suite 5200
Dallas, TX 75201
James.Peacock@gtlaw.com

Michael E. Jusczyk (#7791)
GREENBERG TRAURIG LLP
One International Place, Suite 2000
Boston, MA 02110
Michael.Jusczyk@gtlaw.com

*Attorney for Defendants Navitus Health Solutions, LLC*

Richard D. Salgado
Marina S. Kelly
MCDERMOTT WILL & SCHULTE LLP
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
richard.salgado@mwe.com
mkelly@mwe.com

Michelle S. Lowery
MCDERMOTT WILL & SCHULTE LLP
2049 Century Park East, Suite 3200
Los Angeles, California 90067-3206
mslowery@mwe.com

Charles D. Blackman
Rhode Island Bar No. 5522
LEVY & BLACKMAN LLP
469 Angell Street, Suite 2
Providence, RI 02906
cblackman@levyblackman.com

*Attorneys for Defendants MedImpact Healthcare Systems, Inc.*

**CERTIFICATION**

I certify that on the 13th day of August 2026, a true copy of the above document was filed electronically per this Court's General Order Regarding Access, Service, and Management of Sealed Documents, Mic. 71-7163, and served electronically to counsel of record for Parties named in the Amended Consolidated Class Action Complaint.

By: */s/ Nicole J. Benjamin*

Nicole J. Benjamin